† FELLOWS *versus* SCHOOL DISTRICT No. 8, IN FAYETTE.

Of duress, *per minas*, and by imprisonment.

The payment of a tax, which may conscientiously be retained, with a full knowledge of all the facts, *after* one has been arrested for its non-payment, and *discharged* on his *promise* to pay it, is voluntary, and cannot be recovered back, notwithstanding informalities in its assessment.

ON REPORT from *Nisi Prius*, SHEPLEY, C. J., presiding. ASSUMPSIT, to recover back the sum paid on a school district tax in 1852, for building a school-house.

After the evidence was introduced, the cause was agreed to be submitted to the decision of the full Court upon so much of the testimony as was admissible, and such judgment to be entered as the rights of the parties may require.

Much evidence was given as to the proceedings of the district and the town, but from the view of the case taken by the Court, that part of it becomes immaterial.

The collector of the tax testified, that a tax came into his hands against the inhabitants of school district No, 8; that he collected of the plaintiff on said tax $6,69, that plaintiff protested against the payment of said tax, that he arrested him and carried him to Augusta, (the place of the jail,) and brought him back; that at Augusta the plaintiff promised and agreed, that if he would release him from said arrest he would pay over the $6,69, and the costs of the arrest; that the sum paid was the tax assessed on plaintiff's personal estate and poll; that he thereupon released him from said arrest, and that he afterwards paid him the tax and cost. The arrest was made the last of November, 1852, and it was paid about one week after the arrest, and in pursuance of the agreement by which he was discharged.

*Kempton*, for defendants, argued at length all the points raised in the case, as to the illegal proceedings, which it becomes unnecessary to notice.

He also argued, that in any event the action was not maintainable on two grounds:—

1st. The money was paid voluntarily and with a full

knowledge of all the facts in the case. Money thus paid cannot be recovered back. *Norton* v. *Marden,* 15 Maine, 45.

. He paid the money one week after the arrest, not because he was threatened with arrest or because his property was liable to seizure and sacrifice, but simply because he had promised to pay. The warrant had then lost its vitality. It is of no consequence what had previously transpired between the collector and plaintiff, their agreements and promises amount to nothing, so far as the real and actual fact of payment is concerned. If the payment was the result of choice, a free act of the will, without compulsion or duress either of the mind or body, then the money was paid voluntarily and with a knowledge of all the facts.

. 2. The defendants have received none of the plaintiff's money. The collector released the plaintiff upon his own responsibility, and at his peril. That act done fixed his liability, and he thereby assumed the indebtedness of the plaintiff. He was holden for it, whether plaintiff paid it or not. When plaintiff paid it, he paid it for the exclusive benefit of the collector. The town had a right of action against the collector, immediately on the discharge of plaintiff; so that the money paid by plaintiff was *not* the district's.

3. The equities are on the side of defendants; there is no complaint that a house was not needed; that plaintiff was assessed for property he did not own, or that his proportion was too large. The law and the best interests of the rising generation require districts to build schoolhouses. This district has never had one before, although the town has had a corporate existence of fifty years. Stronger reasons than have been presented in this case, should be shown, before the proceedings of the district are broken up.

*E. O. Bean,* for plaintiff, maintained that many errors in the proceedings were apparent which rendered the tax invalid. As for the payment of the tax, he insisted it was

done under protest and if the tax was illegal, he could re-cover it back, and cited *Smith* v. *Inhabitants of Readfield*, 27 Maine, 145; *Preston* v. *Boston*, 12 Pick. 7.

RICE, J. — The defendant claims to recover the amount of a tax paid to the collector of the town of Fayette, for the benefit of the defendants, which he alleges was illegally assessed upon him, and which he was compelled to pay by duress, and which was paid under protest.

By duress, in its more extended sense, is meant that de-gree of severity, either threatened or impending, or actually inflicted, which is sufficient to overcome the mind and will of a person of ordinary firmness. The common law has divided it into two classes, namely, duress *per minas*, and duress of imprisonment. Duress *per minas* is restricted to the fear of loss of life, or of mayhem, or loss of limb; or in other words of remediless harm to the person. 2 Greenl. Ev. § 301.

The plea of duress of imprisonment is supported by any evidence that the party was unlawfully restrained of his liberty until he would execute the instrument. *Ibid*, § 302. To constitute duress of imprisonment, the imprisonment must be unlawful. 1 Salk. 68.

One peremptorily called upon to pay an illegal tax, by virtue of a warrant issued to a collector of taxes, may give notice that he pays it by duress, and not voluntarily, and it would seem, under such circumstances, may recover it back again. *Preston* v. *Boston*, 12 Pick. 7.

But where money is claimed as rightfully due, and is paid voluntarily, and with a full knowledge of all the facts in the case, it cannot be recovered back if the party to whom it has been paid may conscientiously retain it. *Brisbane* v. *Dacres*, 5 Taunt. 144; *Smith* v. *Readfield*, 27 Maine, 145. Nor can money paid under a mistake of law be reclaimed. *Norton* v. *Marden*, 15 Maine, 45.

A tax had been assessed against the plaintiff by the as-sessors of Fayette, for the benefit of the inhabitants of

School District No. 8, in that town.   Tax bills in which this tax was included, accompanied by a warrant for their collection, had been committed to the collector of taxes for Fayette.   The plaintiff had been called upon by the collector, and payment of the tax against him demanded; he protested against paying; was arrested by the collector and carried to Augusta, when he agreed that he would pay the tax, and was thereupon discharged from his arrest by the collector. About a week after this transaction, without any further interposition, or claim on the part of the collector, so far as the case finds, the plaintiff paid the tax, and costs of arrest and conveyance to Augusta and back.  Was that a voluntary payment, with a knowledge of all the facts, or was it a payment under protest, and by duress?

At common law, as it was understood before and during the reign of Elizabeth, a voluntary escape of a prisoner, in execution, completely and forever discharged him from the debt, so that neither the plaintiff nor sheriff could retake him for the same demand.   Bra. Tit. Escape, Pl. 12 and 45; *Linacre* v. *Rhodes'* case, Leon. R. 96; *Lansing* v. *Fleet*, 2 Johnson's Cases, 3.

Since that time this law has been modified, or differently understood, and a voluntary escape of a debtor in execution, will not deprive the creditor of the right of procuring the rearrest of the debtor on a *new* process, or if he voluntarily return, of considering him in custody under the old; but so far as the sheriff is concerned, he cannot rearrest the debtor on the old process.   By the first arrest the writ has been obeyed, and has performed its proper function; and after a voluntary discharge, the sheriff cannot arrest a second time on the same precept.   If he does so, he is liable to an action for false imprisonment.   *Atkinson* v. *Jameson*, 5 D. & E. 25; *Sheriff of Essex's case*, Hob. 202; Vin. Ab. Escape, p. 17; *Thompson* v. *Lockwood*, 15 John. 256; *Lansing* v. *Fleet*, 2 Johns. Cases, 3; *Com.* v. *Drew*, 4 Mass. 391; *Brown* v. *Getchell*, 11 Mass. 11.

That the collector, after the arrest, permitted the plaintiff

voluntarily to escape, is too plain to require argument. After that escape the power of the collector, under his warrant, to rearrest the plaintiff was extinguished. Nor indeed is there any evidence that he again sought to enforce his warrant by another arrest, or even threatened to do so. If it be said that the tax was paid under the agreement to pay, by means of which the plaintiff procured his discharge from arrest, and that that agreement was extorted by duress, the answer is, if, as the plaintiff contends, the arrest was illegal, then the agreement was without legal consideration, and void. If it be further said that the plaintiff supposed or apprehended that he should be again arrested if he did not pay, and made the payment under the misapprehension of his legal rights, the answer is, that such a misapprehension would be a mistake of law, and not of fact.

Upon the whole, the payment of which the plaintiff now complains, must be deemed to have been made voluntarily, and with a knowledge of all the facts. The action seems to be grounded wholly on supposed technical defects in the proceedings on the part of the town and the school district. The money has been appropriated for a highly meritorious object, and there is no suggestion of oppression, improvidence or waste, on the part of the authorities of the town or district. In such a case we think the money may well be consistently retained, even though there may have been technical informalities in assessing the tax. In the view however, which we have taken of the case, it does not become necessary to examine the proceedings of the town or district; we therefore express no opinion upon that part of the case which refers to the legality of the tax.

*Plaintiff nonsuit.*

TENNEY, J. — having been unable to be present at the hearing, took no part in the decision.